1

2

3

4

5

6

IN THE UNITED STATES DISTRICT COURT

7

FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9 MARILYN MOORE,

10          Plaintiff,                                      No. 11-CV-01926-JSW

11     v.

12 MICHAEL J. ASTRUE, Commissioner of          **ORDER GRANTING IN PART**
   Social Security                             **AND DENYING IN PART**
13                                             **PLAINTIFF'S MOTION FOR**
             Defendant.                        **SUMMARY JUDGMENT,**
14                                             **GRANTING IN PART AND**
                                               **DENYING IN PART**
15                                             **DEFENDANT'S CROSS-MOTION**
                                               **FOR SUMMARY JUDGMENT**
16 _____/           **AND REMANDING CASE**

17

18                              **INTRODUCTION**

19          Now before the Court is the motion for summary judgment filed by plaintiff Marilyn

20 Moore ("Moore") and the cross-motion for summary judgment filed by the Commissioner of

21 Social Security (the "Commissioner"). Pursuant to Civil Local Rule 16-5, the motions have

22 been submitted on the papers without oral argument. Having carefully reviewed the

23 administrative record, the parties' papers, and relevant authority, the Court hereby GRANTS IN

24 PART AND DENIES IN PART Moore's motion for summary judgment and GRANTS IN

25 PART AND DENIES IN PART the Commissioner's cross-motion for summary judgment. The

26 Court REMANDS the matter to the Commission for further proceedings consistent with this

27 order.

28

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

**BACKGROUND**

Moore brings this action pursuant to 42 U.S.C. § 405(g) and seeks judicial review of the Commissioner's decision to deny her claim for supplemental security income ("SSI") benefits.

**A.    Factual Background.**

Moore was 47 years old when she filed her current application for SSI benefits on November 30, 2004.  (Administrative Record ("AR") at 12.)  She has been incarcerated numerous times, generally for prostitution, robbery, and assault.  (AR at 303.)  During her various incarcerations, Moore received psychiatric treatment.  (AR at 787.)  She was diagnosed with bipolar disorder, major depressive disorder, post-traumatic stress disorder, and schizoaffective disorder.  (AR at 787.)  Moore also reports suffering abuse as a child.  (AR at 787-88.)  She attempted suicide on several occasions and reports recurrent suicidal ideation.  (AR at 301, 584, 609, 777, 788.)  Moore received treatment from a psychiatrist and a clinical psychologist at the Parole Outpatient Clinic from January 2008 until February 2009, when she completed her parole.  (AR at 787-88, 807A-B.)  Since then, she received additional mental health treatment from a psychiatrist and therapist through Contra Costa County's Adult Mental Health Program.  (AR 807A, 807C-K.)  She has been treated with several different medication regimes for her various mental impairments.  (AR at 62.)  Also, Moore suffers from some degree of degenerative joint disease in her knees.  *Id.*

Moore has a history of heavy methamphetamine use, and was diagnosed with polysubstance dependence on methamphetamine and cocaine.  (AR at 58.)  By the time of her July 2008 hearing, however, random drug screenings demonstrate that she had abstained from methamphetamine and cocaine since at least July 2007.  (AR at 59, 764.)

Moore has worked in the past as a home health aide, but has never worked full time consistently.  (AR at 62-63.)

**B.    Procedural Background.**

Moore first filed an application for SSI benefits which resulted in an unfavorable decision by administrative law judge ("ALJ") Homer Ball on September 25, 2001.  *Id.*  Moore

1   appealed this decision to the Appeals Council, which denied the request for review on May 10,

2   2002.  *Id.*  The September 25, 2001 decision remains final.  *Id.*

3       Moore filed a second application for SSI benefits on November 30, 2004, and claimed

4   that she became disabled on October 31, 1997.  (AR at 440.)  This action pertains only to

5   Moore's second application.  Moore subsequently amended her disability onset date to

6   November 30, 2004.  (AR at 53.)  The Commissioner denied her application on May 27, 2005

7   and did so again upon reconsideration on January 13, 2006.  *Id.*  On March 13, 2006, Moore

8   filed a request for a hearing by an ALJ.  *Id.*

9   **C.      The Hearing and the ALJ's Decision.**

10      On June 21, 2007, a hearing was held before an ALJ which Moore did not attend.  (AR

11  at 840-43.)  Moore attended hearings before an ALJ on April 25, 2008 and August 26, 2008.

12  (AR at 855-931.)  Moore testified that she can lift only up to ten pounds and has problems

13  standing for long periods of time due to pain in her legs and knees.  (AR at 61.)  She further

14  testified that she does not believe she could work for eight hours due to problems with

15  concentration and getting irritable easily.  (AR at 61-62.)

16      Moore's treating physician, Dr. Phillips, submitted an opinion in which she stated that

17  Moore's "condition has prevented her from being able to work" for some time.  (AR at 788.)

18  However, the ALJ rejected this opinion as contrary to Dr. Phillips' own treatment notes.  (AR

19  at 59.)  Dr. McDevitt, a medical expert, also noted that Dr. Phillips' treatment notes do not support

20  her conclusion.  *Id.*  Dr. McDevitt further advised that because, in his opinion, it takes two years

21  to clear the body and mind from methamphetamine addiction, he could not assess Moore's

22  current mental health state independent of drug abuse.  *Id.*  The ALJ also noted "substantial

23  problems with claimant's credibility."  (AR at 62.)

24      In his decision dated September 22, 2008, the ALJ found that Moore had the following

25  severe impairments: "a history of addiction to methamphetamines, bilateral degenerative joint

26  disease (knees), obesity, and a depressive disorder."  (AR at 56.)  He held that Moore's

27  impairments, including the substance abuse disorder, medically equal sections 12.03, 12.04

28  and/or 12.06 of the listings.  (AR at 572 (citing C.F.R. § 416.920(d)).)  In the absence of

**United States District Court**
For the Northern District of California

3

1   substance abuse, however, the ALJ found that Moore had not proven she would have an

2   impairment or combination of impairments that medically equals any of the impairments in the

3   listings.  (AR at 60.)

4       The ALJ denied Moore's claim, holding that in the absence of substance use, Moore

5   would have the residual functional capacity ("RFC") to perform medium work, "except that she

6   is limited to simple repetitive work that is generally performed one on one or with limited group

7   or public contact."  (AR at 61.)  The ALJ held that Moore was unable to perform any past

8   relevant work, but that given her age, education, work experience, and RFC, there would be a

9   significant number of jobs in the national economy she could perform if she stopped her

10  substance abuse. (AR at 63.)  Thus, the ALJ held that Moore's substance abuse is a contributing

11  factor material to the determination of disability.  (AR at 64.)  Finally, the ALJ concluded that

12  therefore Moore was not disabled at any time from her application's filing date through the date

13  of decision.  (AR at 64.)

14      Having exhausted her administrative remedies, Moore commenced this action for

15  judicial review of the ALJ's decision.  Moore argues that the ALJ's conclusions were not made

16  by application of proper legal standards or supported by substantial evidence.  On November 1,

17  2011, Moore brought the instant motion for summary judgment.  On November 30, 2011, the

18  Commissioner filed a cross-motion for summary judgment.  The Commissioner argues that the

19  ALJ's determinations are supported by substantial evidence and free of legal error.

20      The Court shall address additional facts as necessary in the remainder of this Order.

21                                      **ANALYSIS**

22      Moore raises five arguments in support of her position that she is entitled to benefits.

23  First, Moore argues that the ALJ erred in evaluating her credibility and did not provide clear

24  and convincing reasons for rejecting her testimony regarding the severity of her symptoms.

25  Second, she argues that the ALJ committed legal error when he failed to provide sufficient

26  reasons for rejecting the opinion of a treating physician.  Third, she argues that the ALJ

27  committed legal error when he ignored medical evidence of disabling conditions.  Fourth, she

28

**United States District Court**
For the Northern District of California

4

1   argues that the ALJ improperly determined her RFC.  Fifth, she argues that the ALJ failed to

2   properly analyze the materiality of substance abuse.

3   **A.      Standard of Review.**

4           A federal district court may disturb the Commissioner's final decision only if the

5   decision contains legal error or is not supported by substantial evidence.  *See* 42 U.S.C. §

6   405(g).  "Substantial evidence means more than a mere scintilla, but less than a preponderance;

7   it is such relevant evidence as a reasonable mind might accept as adequate to support a

8   conclusion."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  To determine whether

9   substantial evidence exists, the reviewing court looks at the administrative record as a whole,

10  considering both evidence that supports and undermines the ALJ's findings.  *Id.*  "[W]here the

11  evidence is susceptible to more than one rational interpretation," the reviewing court must

12  uphold the ALJ's decision.  *Id.* at 1039-40.

13  **B.      Legal Standard for Establishing a Prima Facie Case for Disability.**

14          Disability is "the inability to engage in any substantial gainful activity" because of a

15  medical impairment which can result in death or "which has lasted or can be expected to last for

16  a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ applies a

17  five-step sequential evaluation process to determine whether a plaintiff is disabled.  *See* 20

18  C.F.R. § 404.1520.  During the first four steps of this sequence, the claimant bears the burden of

19  proof to demonstrate disability, but the burden shifts to the Commissioner at step five "to show

20  that the claimant can do other kinds of work."  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d

21  685, 689 (9th Cir. 2009) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

22          The five-step analysis proceeds as follows.  First, the claimant must not be engaged in

23  substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  Second, the claimant must have a

24  severe impairment.  *Id.* § 404.1520(c).  Third, if the claimant's impairment meets the duration

25  requirement and meets or equals an impairment listed in Appendix 1 to the regulation (a list of

26  impairments presumed severe enough to preclude work), the claimant will be found disabled

27  without consideration of age, education, or work experience.  *See id.* § 404.1520(d).  Fourth, if

28  the claimant fails to satisfy step three, the ALJ will assess and make a finding on the claimant's

United States District Court

For the Northern District of California

5

United States District Court

For the Northern District of California

1   RFC. *Id.* § 404.1520(e).  The RFC measurement describes the most an individual can do

2   despite his or her limitations.  *Id.* § 404.1545(a)(1).  If the claimant has the RFC to perform past

3   relevant work, the claimant will not be found disabled; if not, the ALJ proceeds to step five.

4   *See id.* § 404.1520(f).  Fifth, if the claimant is able to adjust to other work in the national

5   economy, the claimant will not be found disabled.  *Id.* § 404.1520(g)(1).

6          If the claimant is found to be disabled and there is evidence of substance abuse disorder,

7   the ALJ must determine whether the substance abuse disorder is a contributing factor material

8   to the determination of disability.  *Id.* § 404.1535(a).  In making this determination, the ALJ

9   must evaluate the extent to which the claimant's mental and physical limitations would remain

10  if the claimant ceased the substance abuse.  *Id.* § 404.1535(b)(2).  If the remaining limitations

11  would not be disabling, the substance abuse disorder is a contributing factor material to the

12  determination of disability.  *Id.* § 404.1535(b)(2)(i).  If this is the case, the claimant is not

13  disabled.  *Id.* § 404.1535(b)(1).  If the remaining limitations would be disabling, the substance

14  abuse disorder is not a contributing factor material to the determination of disability.  *Id.* §

15  404.1535(b)(2)(ii).  If so, the claimant is disabled independent of the substance use disorder.  *Id.*

16  **C.     The ALJ Did Not Err when Evaluating Moore's Credibility.**

17         Moore contends that the ALJ erred in evaluating her credibility and further did not

18  provide clear and convincing reasons for rejecting her testimony regarding the severity of her

19  symptoms.  The ALJ cannot reject credibility, "solely because the degree of pain alleged by the

20  claimant is not supported by objective medical evidence." *Bunnell v. Sullivan*, 947 F.2d 341,

21  346-47 (9th Cir. 1991) (en banc).  When an ALJ does reject a claimant's subjective complaints,

22  he must provide sufficiently specific findings to support that conclusion.  *Id.* at 346.  Unless

23  there is affirmative evidence showing that the claimant is malingering, the Commissioner's

24  reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*,

25  81 F.3d 821, 834 (9th Cir. 1996) (quoting *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th

26  Cir.1989)).  The reasons given must be "grounded in the evidence" and must be "sufficiently

27  specific to make clear to the individual and any subsequent reviewers" the weight given to the

28  statements and "the reasons for the weight."  SSR 96-7p.

United States District Court

For the Northern District of California

1    The ALJ incorporated by reference ALJ Ball's statement that Moore had undergone a

2    test which showed evidence of malingering.  (AR at 62 (citing AR at 332).)  Because the ALJ

3    found evidence of malingering, he could make an adverse credibility determination even

4    without providing clear and convincing reasons.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*,

5    533 F.3d 1155, 1160 (9th Cir. 2008) (citing *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir.

6    2006)).  The AL's finding of malingering is sufficient, standing alone, to support his adverse

7    credibility determination.  Nevertheless, the ALJ additionally provided clear and convincing

8    reasons for rejecting Moore's testimony.

9    The ALJ incorporated by reference Judge Ball's finding that Moore lacked credibility

10   due to the fact that she had been convicted of forgery, a crime of moral turpitude.  (AR at 62

11   (citing AR at 332).)  An ALJ may rely on character evidence, such as prior convictions, in

12   evaluating credibility.  *Bunnell*, 947 F.2d at 346.  Moreover, the ALJ pointed out that Moore

13   "has never worked full time consistently" which he found undermined her opinion that she

14   could not work because she was disabled.  (AR at 62.)  An ALJ may consider a claimant's lack

15   of work history as a factor undermining the credibility of her claims that she is out of work

16   because of her impairments.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

17   The ALJ pointed out that Moore's positive response to treatment undermined her

18   allegations of disability, noting that Moore "seems to have done well, with few problems" when

19   she is on regular medication.  (AR at 62.)  An ALJ may consider "the type, dosage,

20   effectiveness, and side effects of any medication [claimant takes or has] taken to alleviate . . .

21   pain or other symptoms."  20 C.F.R. § 416.929(c)(3)(iv).  The record provides ample evidence

22   of positive treatment response in treatment notes from the time of Moore's incarcerations in

23   2004 and 2007-08.  (AR at 536-37, 726, 713, 777, 770, 766.)  Although these same records also

24   contain instances in which Moore's impairments seem more pronounced (AR at 687, 694, 696,

25   712, 718, 719, 726, 727, 736, 739, 765-69, 776), the ALJ noted that these instances were "due

26   to temporary issues involving her SSI benefits and financial problems, along with her mother's

27   illness[.]"  (AR at 59.)  Accordingly, the Court finds that there is substantial evidence to support

28

1    the ALJ's determination that Moore had a positive response to treatment, thus, the ALJ did not

2    err in considering this factor in his credibility determination.

3        Moore also argues that the ALJ improperly failed to consider the consistency of her

4    statements throughout the record.  "One strong indication of the credibility of an individual's

5    statements is their consistency, both internally *and with other information in the case record*."

6    SSR 96-7p (emphasis added).  Although Moore's statements regarding her symptoms appear

7    internally consistent, the ALJ rejected them as inconsistent with other information in the record.

8    (AR at 62.)

9        Finally, Moore notes that her treating physician, Dr. Phillips, directly addressed her

10   credibility in his report dated March 13, 2009, indicating that he finds her "highly credible."

11   (Plaintiff's Mot. at 8 (quoting AR at 807B).)  "Credibility determinations are the province of the

12   ALJ."  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (citing *Russell v. Bowen*, 856 F.2d 81,

13   83 (9th Cir.1988)).  The ALJ's credibility determination has support in the record, therefore he

14   properly rejected Dr. Phillips' opinion on the matter.  Moreover, the ALJ's decision, dated

15   September 22, 2008, was rendered prior to the issuance of Dr. Phillips latest report, dated

16   March 13, 2009, and therefore the ALJ could not have considered it.  (AR at 59, 807A.)

17         Thus, in addition to the evidence of malingering, the ALJ provided clear and

18   convincing reasons supported by substantial evidence in the record for finding Moore's

19   testimony not credible.  Accordingly, the ALJ did not err in evaluating Moore's credibility.[1]

20   **D.    The ALJ Properly Rejected the Opinion of the Treating Physician.**

21       Moore contends that the ALJ erred in rejecting the opinion of her treating physician, Dr.

22   Phillips, who concluded that she is unable to sustain work.  (*See* AR at 59.)  While a treating

23   physician's opinion recieves substantial weight, it is not binding on the ALJ.  *Tonapetyan v.*

24   *Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).  When an ALJ disregards a treating physician's

25   opinion, he must set forth, "specific and legitimate reasons supported by substantial evidence in

26

27         [1] Moore also argues that the ALJ improperly failed to consider the persistence of her
     symptoms during her period of sobriety in his assessment of her credibility.  However, the
     ALJ considered Moore's period of sobriety and found that it was too short to be probative.
28   (AR at 63.)  The Court will discuss the ALJ's assessment of Moore's period of sobriety in
     greater detail below.

United States District Court
For the Northern District of California

the record for doing so." *Lester*, 81 F.3d at 830.  The ALJ can meet this burden by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Accordingly, "opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Id.*

The ALJ rejected Dr. Phillips' opinion that Moore is unable to sustain work on the basis that it is contradicted by Dr. Phillips' treatment notes.  (AR at 59.)  "[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole[.]"  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992)).  Examining Dr. Phillips' treatment notes, the ALJ noted that they "for the most part described the claimant doing well[.]"  (AR at 59.)  In particular, the ALJ pointed out that "during . . . [Moore's] appointments she is described as well groomed, interactive, and laughing."  *Id.*  He further noted that Dr. Phillips wrote that Moore "presents with a [sic] euthymic mood, calm behavior, normal speech, intact judgment, logical and coherent thought process, and no psychosis evident, above average intelligence, and good insight."  *Id.*  He also pointed out that Dr. Phillips wrote that "[s]he reported that her medication works 'beautiful' and keeps her steady."  *Id.*  The ALJ addressed instances in the treatment notes in which Moore reported increased depression, but noted that Dr. Phillips attributed these as "due to temporary issues involving her SSI benefits and financial problems, along with her mother's illness."  *Id.*  Thus, the ALJ provided specific and legitimate reasons supported by substantial evidence for finding that Dr. Phillips' opinion was unsupported by the record as a whole.

Finally, the ALJ noted that Dr. McDevitt, a medical expert, agreed that Dr. Phillips' treatment notes do not support her opinion.  (AR at 53, 59.).  "[R]ejection of the opinion of a treating or examining physician . . . [may be] based *in part* on the testimony of a nontreating, nonexamining medical advisor."  *Morgan v. Comm''r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (emphasis in original).  The ALJ's findings together with Dr. McDevitt's

testimony constitute specific and legitimate reasons for rejecting Dr. Phillips' opinion.  (AR at 765-75.)

In support of her argument that the ALJ's characterization of Dr. Phillips' treatment notes are inaccurate, Moore cites to Dr. Phillips' report dated March 13, 2009.  However, the ALJ rendered his decision on September 22, 2008, prior to the issuance of this latest report.  Therefore, Dr. Phillips' report dated March 13, 2009 was not before the ALJ.  (AR at 59, 807A.)  Moore contends that "[i]f the ALJ needed more information regarding Dr. Phillips' opinion and her treatment notes, he had a duty to 'make every reasonable effort' to contact Dr. Phillips for clarification."  (Plaintiff's Mot. at 9 (citing SSR 96-5p).)  "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001) (citing *Tonapetyan,* 242 F.3d at 1150)).  Here, Dr. Phillips' opinion was not ambiguous.  Nor was the record inadequate for the ALJ to properly evaluate the evidence.  Rather, the ALJ, with support in the record, found the evidence adequate to make a determination regarding Moore's disability, and hence was under no duty to re-contact Dr. Phillips or develop the record further.  Thus, the ALJ did not err in rejecting Dr. Phillips' opinion.[2]

**E.      The ALJ Properly Considered the Objective Medical Evidence.**

Moore argues that the ALJ failed to properly evaluate the remainder of the medical evidence.  First, Moore contends that the ALJ's refusal to consider the content of an April 2000 psychological evaluation of Moore constitutes reversible error.  *Id.*  However, "[m]edical opinions that predate the alleged onset of disability are of limited relevance."  *Carmickle,* 533 F.3d at 1165.  Moore claims a disability onset date of November 30, 2004, well after the April

---

[2] Moore argues that under *Batson* the ALJ may only reject the opinion of a treating physician that is not only unsupported by the record as a whole, but is also conclusory and brief.  (Plaintiff's Reply at 3-4 (citing *Batson*, 359 F.3d at 1190).)  However, *Batson* did not alter the overall standard under which an ALJ may properly reject such an opinion, which simply requires that the ALJ provide "specific and legitimate reasons supported by substantial evidence in the record for doing so."  *See Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998)).

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1    2000 evaluation.  Thus, even if the ALJ's refusal to consider the April 2000 evaluation

2    constitutes error, it is harmless error because the evaluation is of minimal relevance.  *See Stout*

3    *v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (finding error harmless

4    "where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate

5    disability conclusion"); *see also Beasterfeld v. Astrue*, 2011 WL 2632075, *7 (M.D. Fla. June 2,

6    2011) (holding that an ALJ's failure to reconcile his finding with a diagnosis that predated

7    plaintiff's disability onset date was "at most harmless error"), *aff'd sub nom. Beasterfeld v.*

8    *Comm'r of Soc. Sec.*, 2012 WL 2345104 (11th Cir. June 21, 2012).

9         Moore further argues that the ALJ ignored those parts of Dr. McDevitt's testimony that

10   would be helpful to her claim.  In particular, Moore points to Dr. McDevitt's statements that she

11   suffers from posttraumatic stress disorder.  An ALJ need not address evidence that is neither

12   significant or probative.  *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).  The ALJ

13   took into account other evidence of Moore's posttraumatic stress disorder.  (*See* AR at 58

14   (noting that "[d]uring her incarceration, the claimant was . . . diagnosed with . . . post traumatic

15   stress disorder" and that "[o]n February 22, 2008, a mental health update evaluation diagnosed .

16   . . a posttraumatic stress disorder")).  Therefore, Dr. McDevitt's statements are redundant and

17   thus not significant or probative.  The ALJ's failure to discuss these statements does not require

18   reversal.

19        Moore also contends that Dr. McDevitt's testimony reveals that he was unreliable and

20   biased against her.  Claimants "must raise issues at their administrative hearings in order to

21   preserve them on appeal[.]"  *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (citing *Avol*

22   *v. Secretary of Health & Human Serv.*, 883 F.2d 659, 660 (9th Cir.1989)); *see also Robbins v.*

23   *Soc. Sec. Admin.*, 466 F.3d 880, 886 n.3 (9th Cir. 2006) (holding that "[a]s it was not raised and

24   preserved for appeal at the hearing, we do not address Robbins's argument that the ALJ erred in

25   relying on the vocational expert's testimony").  By failing to raise her contention regarding Dr.

26   McDevitt's alleged bias at the hearing, Moore waived this issue.  Moreover, the Court notes

27   that, other than her dissatisfaction with Dr. McDevitt's testimony, Moore does not cite to any

28

1    evidence or other support for her contention of bias.  Accordingly, the ALJ did not err in

2    evaluating the objective medical evidence.

3    **F.       The ALJ's Determination of Moore's RFC Is Legally Flawed.**

4           Moore asserts that the ALJ's determination of her RFC is legally flawed and led to an

5    erroneous determination that she had the capacity to perform medium work.  Specifically,

6    Moore contends that the ALJ: (1) failed to perform a function-by-function analysis of her

7    functional limitations and restrictions before expressing her RFC in terms of exertion level and

8    (2) failed to assess her ability to function on a sustained basis.

9            An ALJ must first determine whether the claimant's impairments meet or equal a listed

10   impairment.  *See* 20 C.F.R. § 416.920(d) (step three of the disability analysis).  If the claimant's

11   impairments do not meet or equal a listed impairment, then the ALJ must assess the claimant's

12   RFC.  *See id.* § 416.920(e) (step four of the disability analysis).  To make an RFC assessment,

13   the ALJ must first perform a "function-by-function" analysis of the claimant's impairments

14   compared with the functions required for work-related activities.  *See Reed v. Massanari*, 270

15   F.3d 838, 843 n.2 (9th Cir. 2001) (citing SSR 96-8p).  The ALJ must engage in the function-by-

16   function analysis before categorizing the claimant's abilities in terms of exertional levels (*e.g.*,

17   light or heavy work).  *See Reed*, 270 F.3d at 843 n.2 (citing SSR 96-8p).  *See Sharma v. Astrue*,

18   2008 WL 4540992, *6 (N.D. Cal. Oct. 6, 2008).  The RFC is then used to determine if the

19   claimant is able to perform past relevant work.  *See* 20 C.F.R. § 416.920(e).  The burden of

20   proof is on the claimant at this step, but the ALJ must make the requisite factual findings to

21   support his conclusion.  *See Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001); *see also*

22   SSR 82-62.  It is a legal error for an ALJ to fail to perform a function-by-function analysis as

23   required by SSR 96-8p in his RFC determination.  *See Sharma v. Astrue*, 2008 WL 4540992, *6

24   (N.D. Cal. Oct. 6, 2008).

25          To perform the requisite analysis with regard to mental abilities, the ALJ must "identify

26   the individual's functional limitations or restrictions and assess his or her work-related abilities

27   on a function-by-function basis, including the functions" set forth in 20 C.F.R. § 404.1545(c).

28   *See* SSR 96-8p; *see also Encinas v. Astrue*, 2012 WL 1520121, *15 (D. Ariz. Apr. 30, 2012)

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1    (holding an ALJ's RFC determination erroneous because the ALJ failed to assess claimant's

2    functional impairments in terms of the specific work-related functions listed in 20 C.F.R. §

3    404.1545(c)).  These functions include "limitations in understanding, remembering, and

4    carrying out instructions, and in responding appropriately to supervision, co-workers, and work

5    pressures in a work setting, may reduce [claimant's] ability to do past work and other work."

6    *See Serna v. Astrue*, 2008 WL 5179033, *2 (C.D. Cal. Dec. 9, 2008) (quoting 20 C.F.R. §

7    404.1545(c)).

8           Here, the ALJ concluded that, in the absence of substance abuse, Moore would have the

9    RFC to perform "medium work . . . except that she is limited to simple repetitive work that is

10   generally performed one on one or with limited group or public contact."  (AR at 61.)  In

11   reaching this conclusion, the ALJ failed to address any of the above-noted functions listed in

12   paragraph (c) of 20 C.F.R. § 404.1545.  Thus, the ALJ determined Moore's RFC in terms of the

13   exertional work level ("medium work") without first engaging in the required function-by-

14   function analysis.  Furthermore, the ALJ failed to address Moore's ability to perform work-

15   related mental activities on a "'regular and continuing basis[,]' . . . [meaning] 8 hours a day, for

16   5 days a week, or an equivalent work schedule."  SSR 96-8p.  Therefore, the ALJ applied the

17   incorrect legal standard.

18          The Commissioner does not dispute that the ALJ failed to perform the function-by-

19   function analysis.  Rather, the Commissioner argues that the ALJ was not required to perform

20   this analysis in light of *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  "Preparing a

21   function-by-function analysis for medical conditions or impairments that the ALJ found neither

22   credible nor supported by the record is unnecessary."  *Id.*  The Commissioner correctly argues

23   that the ALJ was not required to perform a function-by-function analysis for those of Moore's

24   impairments which he found incredible and unsupported by the record.  However, the ALJ

25   found Moore's mental impairment credible and supported by the record to a certain extent.  (AR

26   at 62 (noting "[w]ith respect to the mental impairment, there is evidence of depression").)

27   Thus, he erred in failing to perform a function-by-function analysis with regard to Moore's

28   depression.

**G.      The ALJ Properly Analyzed the Materiality of Substance Abuse.**

Moore argues that the ALJ erred in: (1) failing to properly make a disability determination prior to assessing the materiality of her substance abuse and (2) failing to properly take into account her period of abstinence from substance use.  "[A]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(C).  The ALJ first must conduct the five-step disability inquiry without attempting to determine the impact of a substance abuse disorder.  If the ALJ finds the claimant disabled, and there is evidence of substance abuse, the ALJ must proceed under the evaluation set forth in 20 C.F.R. §§ 404.1535 or 416.935 to determine if the claimant would still be disabled absent the substance abuse.  *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).  "The key factor . . . is whether [the ALJ] would still find [claimant] disabled if [claimant] stopped using drugs or alcohol."  20 C.F.R. § 404.1535(b)(1).  The claimant bears the burden of proving that drug or alcohol abuse is not a contributing factor material to his disability.  *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).  Where the evidence of materiality is inconclusive, the claimant's burden of proof is not satisfied.  *Parra*, 481 F.3d at 749-750.

Moore argues that the ALJ erred in making a determination regarding the materiality of her substance abuse before properly finding her disabled via the prescribed five-step inquiry.  However, the ALJ, relying on the testimony of Dr. McDevitt and other evidence as discussed above, found Moore disabled at step three.  (*See* AR at 57-59.)  He did so before separating out the impact of the substance use disorder.  (*See id.*)  Thus, the ALJ properly found Moore disabled prior to analyzing the materiality of her substance abuse.

Moore also argues that the ALJ's materiality analysis was flawed because he failed to properly assess the period during which she was sober prior to her hearing.  Periods of abstinence are important in making the materiality assessment.  *See Salazar v. Barnhart*, 468 F.3d 615, 622 (10th Cir. 2006).  However, an ALJ may rely on a medical expert's opinion in assessing the contested significance of a period of abstinence.  *See Depetro v. Astrue*, 2009 WL 4666490, *7 (E.D. Wash. Dec. 1, 2009) (finding that an ALJ properly relied on a medical

1    expert's opinion that "at least six months of abstinence is required to accurately assess drug free

2    psychological functioning" in rejecting examining physician's evaluation as to the significance

3    of claimant's period of abstinence).  Here, the ALJ properly relied on Dr. McDevitt's opinion

4    that it takes two years to "clear the body and mind" from the effects of methamphetamine

5    addiction.  (*See* AR at 59.)  Thus, the ALJ properly found that Moore's period of abstinence did

6    not constitute evidence that her disability was independent from her substance abuse.[3]

7    Therefore, the ALJ's did not err in conducting the materiality analysis.

8    **H.      Remand Standard.**

9            The decision to remand is within the discretion of the district court.  *Harman v. Apfel*,

10   211 F.3d 1172, 1175-77 (9th Cir. 2000).  If additional proceedings can remedy defects in the

11   original administrative proceedings or will allow the Commissioner properly to complete the

12   administrative proceedings, then the case should be remanded.  *McAllister v. Sullivan*, 888 F.2d

13   599, 603 (9th Cir. 1980).  Here, remand is appropriate because additional proceedings can

14   remedy the ALJ's legal error in failing to conduct a function-by-function analysis of Moore's

15   impairments.

16                                        **CONCLUSION**

17          For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART

18   Moore's motion for summary judgment and GRANTS IN PART AND DENIES IN PART the

19   Commissioner's cross-motion for summary judgment.  The Court REMANDS the matter to the

20   Commission for further proceedings consistent with this order.  Moreover, although the ALJ did

21   not err in failing to consider Dr. Phillips' report dated March 13, 2009, the Court finds that

22   consideration of this report upon remand would be beneficial and ensure a full and complete

23   ///

24   ///

25   _____

26          [3] Moore notes a Social Security position that "a period of one month's abstinence may
     be adequate" to assess materiality.  (Plaintiff's Mot. at 13.)  Moore appears to be referring to
27   a Social Security Administration teletype suggesting that a period of abstinence of one month
     or more is useful in assessing materiality.  *See* Social Security Administration Office of
28   Disability, Emergency Teletype No. EM-96-94 (1996).  However, teletypes are internal
     agency documents that do not carry the force of law.  *See Parra*, 481 F.3d at 749.  Thus, the
     ALJ did not err in disregarding it.

United States District Court
For the Northern District of California

review of Moore's medical records.  Therefore, in the interest of justice, the Court directs the

ALJ to consider this report by Dr. Phillips.

**IT IS SO ORDERED.**

Dated: August 6, 2012

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California