IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARILYN MOORE,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security<br><br>    Defendant.<br>_____/ | No. 11-CV-01926-JSW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART AND DENYING IN PART DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REMANDING CASE** |

**INTRODUCTION**

Now before the Court is the motion for summary judgment filed by plaintiff Marilyn Moore ("Moore") and the cross-motion for summary judgment filed by the Commissioner of Social Security (the "Commissioner"). Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the administrative record, the parties' papers, and relevant authority, the Court hereby GRANTS IN PART AND DENIES IN PART Moore's motion for summary judgment and GRANTS IN PART AND DENIES IN PART the Commissioner's cross-motion for summary judgment. The Court REMANDS the matter to the Commission for further proceedings consistent with this order.

# BACKGROUND

Moore brings this action pursuant to 42 U.S.C. § 405(g) and seeks judicial review of the Commissioner's decision to deny her claim for supplemental security income ("SSI") benefits.

**A.     Factual Background.**

Moore was 47 years old when she filed her current application for SSI benefits on November 30, 2004. (Administrative Record ("AR") at 12.) She has been incarcerated numerous times, generally for prostitution, robbery, and assault. (AR at 303.) During her various incarcerations, Moore received psychiatric treatment. (AR at 787.) She was diagnosed with bipolar disorder, major depressive disorder, post-traumatic stress disorder, and schizoaffective disorder. (AR at 787.) Moore also reports suffering abuse as a child. (AR at 787-88.) She attempted suicide on several occasions and reports recurrent suicidal ideation. (AR at 301, 584, 609, 777, 788.) Moore received treatment from a psychiatrist and a clinical psychologist at the Parole Outpatient Clinic from January 2008 until February 2009, when she completed her parole. (AR at 787-88, 807A-B.) Since then, she received additional mental health treatment from a psychiatrist and therapist through Contra Costa County's Adult Mental Health Program. (AR 807A, 807C-K.) She has been treated with several different medication regimes for her various mental impairments. (AR at 62.) Also, Moore suffers from some degree of degenerative joint disease in her knees. *Id.*

Moore has a history of heavy methamphetamine use, and was diagnosed with polysubstance dependence on methamphetamine and cocaine. (AR at 58.) By the time of her July 2008 hearing, however, random drug screenings demonstrate that she had abstained from methamphetamine and cocaine since at least July 2007. (AR at 59, 764.)

Moore has worked in the past as a home health aide, but has never worked full time consistently. (AR at 62-63.)

**B.     Procedural Background.**

Moore first filed an application for SSI benefits which resulted in an unfavorable decision by administrative law judge ("ALJ") Homer Ball on September 25, 2001. *Id.* Moore

appealed this decision to the Appeals Council, which denied the request for review on May 10, 2002. *Id.* The September 25, 2001 decision remains final. *Id.*

Moore filed a second application for SSI benefits on November 30, 2004, and claimed that she became disabled on October 31, 1997. (AR at 440.) This action pertains only to Moore's second application. Moore subsequently amended her disability onset date to November 30, 2004. (AR at 53.) The Commissioner denied her application on May 27, 2005 and did so again upon reconsideration on January 13, 2006. *Id.* On March 13, 2006, Moore filed a request for a hearing by an ALJ. *Id.*

**C.    The Hearing and the ALJ's Decision.**

On June 21, 2007, a hearing was held before an ALJ which Moore did not attend. (AR at 840-43.) Moore attended hearings before an ALJ on April 25, 2008 and August 26, 2008. (AR at 855-931.) Moore testified that she can lift only up to ten pounds and has problems standing for long periods of time due to pain in her legs and knees. (AR at 61.) She further testified that she does not believe she could work for eight hours due to problems with concentration and getting irritable easily. (AR at 61-62.)

Moore's treating physician, Dr. Phillips, submitted an opinion in which she stated that Moore's "condition has prevented her from being able to work" for some time. (AR at 788.) However, the ALJ rejected this opinion as contrary to Dr. Phillips' own treatment notes. (AR at 59.) Dr. McDevitt, a medical expert, also noted that Dr. Phillips' treatment notes do not support her conclusion. *Id.* Dr. McDevitt further advised that because, in his opinion, it takes two years to clear the body and mind from methamphetamine addiction, he could not assess Moore's current mental health state independent of drug abuse. *Id.* The ALJ also noted "substantial problems with claimant's credibility." (AR at 62.)

In his decision dated September 22, 2008, the ALJ found that Moore had the following severe impairments: "a history of addiction to methamphetamines, bilateral degenerative joint disease (knees), obesity, and a depressive disorder." (AR at 56.) He held that Moore's impairments, including the substance abuse disorder, medically equal sections 12.03, 12.04 and/or 12.06 of the listings. (AR at 572 (citing C.F.R. § 416.920(d)).) In the absence of

substance abuse, however, the ALJ found that Moore had not proven she would have an impairment or combination of impairments that medically equals any of the impairments in the listings. (AR at 60.)

The ALJ denied Moore's claim, holding that in the absence of substance use, Moore would have the residual functional capacity ("RFC") to perform medium work, "except that she is limited to simple repetitive work that is generally performed one on one or with limited group or public contact." (AR at 61.) The ALJ held that Moore was unable to perform any past relevant work, but that given her age, education, work experience, and RFC, there would be a significant number of jobs in the national economy she could perform if she stopped her substance abuse. (AR at 63.) Thus, the ALJ held that Moore's substance abuse is a contributing factor material to the determination of disability. (AR at 64.) Finally, the ALJ concluded that therefore Moore was not disabled at any time from her application's filing date through the date of decision. (AR at 64.)

Having exhausted her administrative remedies, Moore commenced this action for judicial review of the ALJ's decision. Moore argues that the ALJ's conclusions were not made by application of proper legal standards or supported by substantial evidence. On November 1, 2011, Moore brought the instant motion for summary judgment. On November 30, 2011, the Commissioner filed a cross-motion for summary judgment. The Commissioner argues that the ALJ's determinations are supported by substantial evidence and free of legal error.

The Court shall address additional facts as necessary in the remainder of this Order.

**ANALYSIS**

Moore raises five arguments in support of her position that she is entitled to benefits. First, Moore argues that the ALJ erred in evaluating her credibility and did not provide clear and convincing reasons for rejecting her testimony regarding the severity of her symptoms. Second, she argues that the ALJ committed legal error when he failed to provide sufficient reasons for rejecting the opinion of a treating physician. Third, she argues that the ALJ committed legal error when he ignored medical evidence of disabling conditions. Fourth, she

4

argues that the ALJ improperly determined her RFC.  Fifth, she argues that the ALJ failed to properly analyze the materiality of substance abuse.

**A.     Standard of Review.**

A federal district court may disturb the Commissioner's final decision only if the decision contains legal error or is not supported by substantial evidence.  *See* 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  To determine whether substantial evidence exists, the reviewing court looks at the administrative record as a whole, considering both evidence that supports and undermines the ALJ's findings.  *Id.*  "[W]here the evidence is susceptible to more than one rational interpretation," the reviewing court must uphold the ALJ's decision.  *Id.* at 1039-40.

**B.     Legal Standard for Establishing a Prima Facie Case for Disability.**

Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ applies a five-step sequential evaluation process to determine whether a plaintiff is disabled.  *See* 20 C.F.R. § 404.1520.  During the first four steps of this sequence, the claimant bears the burden of proof to demonstrate disability, but the burden shifts to the Commissioner at step five "to show that the claimant can do other kinds of work."  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The five-step analysis proceeds as follows.  First, the claimant must not be engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  Second, the claimant must have a severe impairment.  *Id.* § 404.1520(c).  Third, if the claimant's impairment meets the duration requirement and meets or equals an impairment listed in Appendix 1 to the regulation (a list of impairments presumed severe enough to preclude work), the claimant will be found disabled without consideration of age, education, or work experience.  *See id.* § 404.1520(d).  Fourth, if the claimant fails to satisfy step three, the ALJ will assess and make a finding on the claimant's

5

RFC. *Id.* § 404.1520(e). The RFC measurement describes the most an individual can do despite his or her limitations. *Id.* § 404.1545(a)(1). If the claimant has the RFC to perform past relevant work, the claimant will not be found disabled; if not, the ALJ proceeds to step five. *See id.* § 404.1520(f). Fifth, if the claimant is able to adjust to other work in the national economy, the claimant will not be found disabled. *Id.* § 404.1520(g)(1).

If the claimant is found to be disabled and there is evidence of substance abuse disorder, the ALJ must determine whether the substance abuse disorder is a contributing factor material to the determination of disability. *Id.* § 404.1535(a). In making this determination, the ALJ must evaluate the extent to which the claimant's mental and physical limitations would remain if the claimant ceased the substance abuse. *Id.* § 404.1535(b)(2). If the remaining limitations would not be disabling, the substance abuse disorder is a contributing factor material to the determination of disability. *Id.* § 404.1535(b)(2)(i). If this is the case, the claimant is not disabled. *Id.* § 404.1535(b)(1). If the remaining limitations would be disabling, the substance abuse disorder is not a contributing factor material to the determination of disability. *Id.* § 404.1535(b)(2)(ii). If so, the claimant is disabled independent of the substance use disorder. *Id.*

**C.     The ALJ Did Not Err when Evaluating Moore's Credibility.**

Moore contends that the ALJ erred in evaluating her credibility and further did not provide clear and convincing reasons for rejecting her testimony regarding the severity of her symptoms. The ALJ cannot reject credibility, "solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991) (en banc). When an ALJ does reject a claimant's subjective complaints, he must provide sufficiently specific findings to support that conclusion. *Id.* at 346. Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir.1989)). The reasons given must be "grounded in the evidence" and must be "sufficiently specific to make clear to the individual and any subsequent reviewers" the weight given to the statements and "the reasons for the weight." SSR 96-7p.

The ALJ incorporated by reference ALJ Ball's statement that Moore had undergone a test which showed evidence of malingering. (AR at 62 (citing AR at 332).) Because the ALJ found evidence of malingering, he could make an adverse credibility determination even without providing clear and convincing reasons. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006)). The AL's finding of malingering is sufficient, standing alone, to support his adverse credibility determination. Nevertheless, the ALJ additionally provided clear and convincing reasons for rejecting Moore's testimony.

The ALJ incorporated by reference Judge Ball's finding that Moore lacked credibility due to the fact that she had been convicted of forgery, a crime of moral turpitude. (AR at 62 (citing AR at 332).) An ALJ may rely on character evidence, such as prior convictions, in evaluating credibility. *Bunnell*, 947 F.2d at 346. Moreover, the ALJ pointed out that Moore "has never worked full time consistently" which he found undermined her opinion that she could not work because she was disabled. (AR at 62.) An ALJ may consider a claimant's lack of work history as a factor undermining the credibility of her claims that she is out of work because of her impairments. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ pointed out that Moore's positive response to treatment undermined her allegations of disability, noting that Moore "seems to have done well, with few problems" when she is on regular medication. (AR at 62.) An ALJ may consider "the type, dosage, effectiveness, and side effects of any medication [claimant takes or has] taken to alleviate . . . pain or other symptoms." 20 C.F.R. § 416.929(c)(3)(iv). The record provides ample evidence of positive treatment response in treatment notes from the time of Moore's incarcerations in 2004 and 2007-08. (AR at 536-37, 726, 713, 777, 770, 766.) Although these same records also contain instances in which Moore's impairments seem more pronounced (AR at 687, 694, 696, 712, 718, 719, 726, 727, 736, 739, 765-69, 776), the ALJ noted that these instances were "due to temporary issues involving her SSI benefits and financial problems, along with her mother's illness[.]" (AR at 59.) Accordingly, the Court finds that there is substantial evidence to support

7

the ALJ's determination that Moore had a positive response to treatment, thus, the ALJ did not err in considering this factor in his credibility determination.

Moore also argues that the ALJ improperly failed to consider the consistency of her statements throughout the record. "One strong indication of the credibility of an individual's statements is their consistency, both internally *and with other information in the case record*." SSR 96-7p (emphasis added). Although Moore's statements regarding her symptoms appear internally consistent, the ALJ rejected them as inconsistent with other information in the record. (AR at 62.)

Finally, Moore notes that her treating physician, Dr. Phillips, directly addressed her credibility in his report dated March 13, 2009, indicating that he finds her "highly credible." (Plaintiff's Mot. at 8 (quoting AR at 807B).) "Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (citing *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir.1988)). The ALJ's credibility determination has support in the record, therefore he properly rejected Dr. Phillips' opinion on the matter. Moreover, the ALJ's decision, dated September 22, 2008, was rendered prior to the issuance of Dr. Phillips latest report, dated March 13, 2009, and therefore the ALJ could not have considered it. (AR at 59, 807A.)

Thus, in addition to the evidence of malingering, the ALJ provided clear and convincing reasons supported by substantial evidence in the record for finding Moore's testimony not credible. Accordingly, the ALJ did not err in evaluating Moore's credibility.[1]

**D.    The ALJ Properly Rejected the Opinion of the Treating Physician.**

Moore contends that the ALJ erred in rejecting the opinion of her treating physician, Dr. Phillips, who concluded that she is unable to sustain work. (*See* AR at 59.) While a treating physician's opinion recieves substantial weight, it is not binding on the ALJ. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). When an ALJ disregards a treating physician's opinion, he must set forth, "specific and legitimate reasons supported by substantial evidence in

---

[1] Moore also argues that the ALJ improperly failed to consider the persistence of her symptoms during her period of sobriety in his assessment of her credibility. However, the ALJ considered Moore's period of sobriety and found that it was too short to be probative. (AR at 63.) The Court will discuss the ALJ's assessment of Moore's period of sobriety in greater detail below.

8

1   the record for doing so." *Lester*, 81 F.3d at 830.  The ALJ can meet this burden by "setting out

2   a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

3   interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.

4   1989).  Accordingly, "opinions of non-treating or non-examining physicians may also serve as

5   substantial evidence when the opinions are consistent with independent clinical findings or

6   other evidence in the record." *Id.*

7         The ALJ rejected Dr. Phillips' opinion that Moore is unable to sustain work on the basis

8   that it is contradicted by Dr. Phillips' treatment notes.  (AR at 59.)  "[A]n ALJ may discredit

9   treating physicians' opinions that are conclusory, brief, and unsupported by the record as a

10  whole[.]"  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citing

11  *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992)).  Examining Dr. Phillips' treatment

12  notes, the ALJ noted that they "for the most part described the claimant doing well[.]"  (AR at

13  59.)  In particular, the ALJ pointed out that "during . . . [Moore's] appointments she is described

14  as well groomed, interactive, and laughing."  *Id.*  He further noted that Dr. Phillips wrote that

15  Moore "presents with a [sic] euthymic mood, calm behavior, normal speech, intact judgment,

16  logical and coherent thought process, and no psychosis evident, above average intelligence, and

17  good insight."  *Id.*  He also pointed out that Dr. Phillips wrote that "[s]he reported that her

18  medication works 'beautiful' and keeps her steady."  *Id.*  The ALJ addressed instances in the

19  treatment notes in which Moore reported increased depression, but noted that Dr. Phillips

20  attributed these as "due to temporary issues involving her SSI benefits and financial problems,

21  along with her mother's illness."  *Id.*  Thus, the ALJ provided specific and legitimate reasons

22  supported by substantial evidence for finding that Dr. Phillips' opinion was unsupported by the

23  record as a whole.

24        Finally, the ALJ noted that Dr. McDevitt, a medical expert, agreed that Dr. Phillips'

25  treatment notes do not support her opinion.  (AR at 53, 59.).  "[R]ejection of the opinion of a

26  treating or examining physician . . . [may be] based *in part* on the testimony of a nontreating,

27  nonexamining medical advisor."  *Morgan v. Comm''r of Soc. Sec. Admin.*, 169 F.3d 595, 602

28  (9th Cir. 1999) (emphasis in original).  The ALJ's findings together with Dr. McDevitt's

9

1  testimony constitute specific and legitimate reasons for rejecting Dr. Phillips' opinion. (AR at
2  765-75.)
3        In support of her argument that the ALJ's characterization of Dr. Phillips' treatment
4  notes are inaccurate, Moore cites to Dr. Phillips' report dated March 13, 2009. However, the
5  ALJ rendered his decision on September 22, 2008, prior to the issuance of this latest report.
6  Therefore, Dr. Phillips' report dated March 13, 2009 was not before the ALJ. (AR at 59,
7  807A.) Moore contends that "[i]f the ALJ needed more information regarding Dr. Phillips'
8  opinion and her treatment notes, he had a duty to 'make every reasonable effort' to contact Dr.
9  Phillips for clarification." (Plaintiff's Mot. at 9 (citing SSR 96-5p).) "An ALJ's duty to
10 develop the record further is triggered only when there is ambiguous evidence or when the
11 record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari,* 276
12 F.3d 453, 459-60 (9th Cir. 2001) (citing *Tonapetyan,* 242 F.3d at 1150)). Here, Dr. Phillips'
13 opinion was not ambiguous. Nor was the record inadequate for the ALJ to properly evaluate the
14 evidence. Rather, the ALJ, with support in the record, found the evidence adequate to make a
15 determination regarding Moore's disability, and hence was under no duty to re-contact Dr.
16 Phillips or develop the record further. Thus, the ALJ did not err in rejecting Dr. Phillips'
17 opinion.[2]

18 **E.    The ALJ Properly Considered the Objective Medical Evidence.**

19       Moore argues that the ALJ failed to properly evaluate the remainder of the medical
20 evidence. First, Moore contends that the ALJ's refusal to consider the content of an April 2000
21 psychological evaluation of Moore constitutes reversible error. *Id.* However, "[m]edical
22 opinions that predate the alleged onset of disability are of limited relevance." *Carmickle*, 533
23 F.3d at 1165. Moore claims a disability onset date of November 30, 2004, well after the April

---

25     [2] Moore argues that under *Batson* the ALJ may only reject the opinion of a treating physician that is not only unsupported by the record as a whole, but is also conclusory and
26 brief. (Plaintiff's Reply at 3-4 (citing *Batson*, 359 F.3d at 1190).) However, *Batson* did not alter the overall standard under which an ALJ may properly reject such an opinion, which
27 simply requires that the ALJ provide "specific and legitimate reasons supported by substantial evidence in the record for doing so." *See Orn v. Astrue*, 495 F.3d 625, 632 (9th
28 Cir. 2007) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998)).

2000 evaluation. Thus, even if the ALJ's refusal to consider the April 2000 evaluation constitutes error, it is harmless error because the evaluation is of minimal relevance. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (finding error harmless "where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion"); *see also Beasterfeld v. Astrue*, 2011 WL 2632075, *7 (M.D. Fla. June 2, 2011) (holding that an ALJ's failure to reconcile his finding with a diagnosis that predated plaintiff's disability onset date was "at most harmless error"), *aff'd sub nom. Beasterfeld v. Comm'r of Soc. Sec.*, 2012 WL 2345104 (11th Cir. June 21, 2012).

Moore further argues that the ALJ ignored those parts of Dr. McDevitt's testimony that would be helpful to her claim. In particular, Moore points to Dr. McDevitt's statements that she suffers from posttraumatic stress disorder. An ALJ need not address evidence that is neither significant or probative. *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). The ALJ took into account other evidence of Moore's posttraumatic stress disorder. (*See* AR at 58 (noting that "[d]uring her incarceration, the claimant was . . . diagnosed with . . . post traumatic stress disorder" and that "[o]n February 22, 2008, a mental health update evaluation diagnosed . . . a posttraumatic stress disorder")). Therefore, Dr. McDevitt's statements are redundant and thus not significant or probative. The ALJ's failure to discuss these statements does not require reversal.

Moore also contends that Dr. McDevitt's testimony reveals that he was unreliable and biased against her. Claimants "must raise issues at their administrative hearings in order to preserve them on appeal[.]" *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (citing *Avol v. Secretary of Health & Human Serv.*, 883 F.2d 659, 660 (9th Cir.1989)); *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 n.3 (9th Cir. 2006) (holding that "[a]s it was not raised and preserved for appeal at the hearing, we do not address Robbins's argument that the ALJ erred in relying on the vocational expert's testimony"). By failing to raise her contention regarding Dr. McDevitt's alleged bias at the hearing, Moore waived this issue. Moreover, the Court notes that, other than her dissatisfaction with Dr. McDevitt's testimony, Moore does not cite to any

11

evidence or other support for her contention of bias. Accordingly, the ALJ did not err in evaluating the objective medical evidence.

**F.     The ALJ's Determination of Moore's RFC Is Legally Flawed.**

Moore asserts that the ALJ's determination of her RFC is legally flawed and led to an erroneous determination that she had the capacity to perform medium work. Specifically, Moore contends that the ALJ: (1) failed to perform a function-by-function analysis of her functional limitations and restrictions before expressing her RFC in terms of exertion level and (2) failed to assess her ability to function on a sustained basis.

An ALJ must first determine whether the claimant's impairments meet or equal a listed impairment. *See* 20 C.F.R. § 416.920(d) (step three of the disability analysis). If the claimant's impairments do not meet or equal a listed impairment, then the ALJ must assess the claimant's RFC. *See id.* § 416.920(e) (step four of the disability analysis). To make an RFC assessment, the ALJ must first perform a "function-by-function" analysis of the claimant's impairments compared with the functions required for work-related activities. *See Reed v. Massanari*, 270 F.3d 838, 843 n.2 (9th Cir. 2001) (citing SSR 96-8p). The ALJ must engage in the function-by-function analysis before categorizing the claimant's abilities in terms of exertional levels (*e.g.*, light or heavy work). *See Reed*, 270 F.3d at 843 n.2 (citing SSR 96-8p). *See Sharma v. Astrue*, 2008 WL 4540992, *6 (N.D. Cal. Oct. 6, 2008). The RFC is then used to determine if the claimant is able to perform past relevant work. *See* 20 C.F.R. § 416.920(e). The burden of proof is on the claimant at this step, but the ALJ must make the requisite factual findings to support his conclusion. *See Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001); *see also* SSR 82-62. It is a legal error for an ALJ to fail to perform a function-by-function analysis as required by SSR 96-8p in his RFC determination. *See Sharma v. Astrue*, 2008 WL 4540992, *6 (N.D. Cal. Oct. 6, 2008).

To perform the requisite analysis with regard to mental abilities, the ALJ must "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" set forth in 20 C.F.R. § 404.1545(c). *See* SSR 96-8p; *see also Encinas v. Astrue*, 2012 WL 1520121, *15 (D. Ariz. Apr. 30, 2012)

12

1 (holding an ALJ's RFC determination erroneous because the ALJ failed to assess claimant's
2 functional impairments in terms of the specific work-related functions listed in 20 C.F.R. §
3 404.1545(c)). These functions include "limitations in understanding, remembering, and
4 carrying out instructions, and in responding appropriately to supervision, co-workers, and work
5 pressures in a work setting, may reduce [claimant's] ability to do past work and other work."
6 *See Serna v. Astrue*, 2008 WL 5179033, *2 (C.D. Cal. Dec. 9, 2008) (quoting 20 C.F.R. §
7 404.1545(c)).

8 Here, the ALJ concluded that, in the absence of substance abuse, Moore would have the
9 RFC to perform "medium work . . . except that she is limited to simple repetitive work that is
10 generally performed one on one or with limited group or public contact." (AR at 61.) In
11 reaching this conclusion, the ALJ failed to address any of the above-noted functions listed in
12 paragraph (c) of 20 C.F.R. § 404.1545. Thus, the ALJ determined Moore's RFC in terms of the
13 extertional work level ("medium work") without first engaging in the required function-by-
14 function analysis. Furthermore, the ALJ failed to address Moore's ability to perform work-
15 related mental activities on a "'regular and continuing basis[,]' . . . [meaning] 8 hours a day, for
16 5 days a week, or an equivalent work schedule." SSR 96-8p. Therefore, the ALJ applied the
17 incorrect legal standard.

18 The Commissioner does not dispute that the ALJ failed to perform the function-by-
19 function analysis. Rather, the Commissioner argues that the ALJ was not required to perform
20 this analysis in light of *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). "Preparing a
21 function-by-function analysis for medical conditions or impairments that the ALJ found neither
22 credible nor supported by the record is unnecessary." *Id.* The Commissioner correctly argues
23 that the ALJ was not required to perform a function-by-function analysis for those of Moore's
24 impairments which he found incredible and unsupported by the record. However, the ALJ
25 found Moore's mental impairment credible and supported by the record to a certain extent. (AR
26 at 62 (noting "[w]ith respect to the mental impairment, there is evidence of depression").)
27 Thus, he erred in failing to perform a function-by-function analysis with regard to Moore's
28 depression.

13

**G.     The ALJ Properly Analyzed the Materiality of Substance Abuse.**

Moore argues that the ALJ erred in: (1) failing to properly make a disability determination prior to assessing the materiality of her substance abuse and (2) failing to properly take into account her period of abstinence from substance use. "[A]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). The ALJ first must conduct the five-step disability inquiry without attempting to determine the impact of a substance abuse disorder. If the ALJ finds the claimant disabled, and there is evidence of substance abuse, the ALJ must proceed under the evaluation set forth in 20 C.F.R. §§ 404.1535 or 416.935 to determine if the claimant would still be disabled absent the substance abuse. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). "The key factor . . . is whether [the ALJ] would still find [claimant] disabled if [claimant] stopped using drugs or alcohol." 20 C.F.R. § 404.1535(b)(1). The claimant bears the burden of proving that drug or alcohol abuse is not a contributing factor material to his disability. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007). Where the evidence of materiality is inconclusive, the claimant's burden of proof is not satisfied. *Parra*, 481 F.3d at 749-750.

Moore argues that the ALJ erred in making a determination regarding the materiality of her substance abuse before properly finding her disabled via the prescribed five-step inquiry. However, the ALJ, relying on the testimony of Dr. McDevitt and other evidence as discussed above, found Moore disabled at step three. (*See* AR at 57-59.) He did so before separating out the impact of the substance use disorder. (*See id.*) Thus, the ALJ properly found Moore disabled prior to analyzing the materiality of her substance abuse.

Moore also argues that the ALJ's materiality analysis was flawed because he failed to properly assess the period during which she was sober prior to her hearing. Periods of abstinence are important in making the materiality assessment. *See Salazar v. Barnhart*, 468 F.3d 615, 622 (10th Cir. 2006). However, an ALJ may rely on a medical expert's opinion in assessing the contested significance of a period of abstinence. *See Depetro v. Astrue*, 2009 WL 4666490, *7 (E.D. Wash. Dec. 1, 2009) (finding that an ALJ properly relied on a medical

14

expert's opinion that "at least six months of abstinence is required to accurately assess drug free psychological functioning" in rejecting examining physician's evaluation as to the significance of claimant's period of abstinence). Here, the ALJ properly relied on Dr. McDevitt's opinion that it takes two years to "clear the body and mind" from the effects of methamphetamine addiction. (*See* AR at 59.) Thus, the ALJ properly found that Moore's period of abstinence did not constitute evidence that her disability was independent from her substance abuse.[3] Therefore, the ALJ's did not err in conducting the materiality analysis.

**H.     Remand Standard.**

The decision to remand is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1175-77 (9th Cir. 2000). If additional proceedings can remedy defects in the original administrative proceedings or will allow the Commissioner properly to complete the administrative proceedings, then the case should be remanded. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1980). Here, remand is appropriate because additional proceedings can remedy the ALJ's legal error in failing to conduct a function-by-function analysis of Moore's impairments.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Moore's motion for summary judgment and GRANTS IN PART AND DENIES IN PART the Commissioner's cross-motion for summary judgment. The Court REMANDS the matter to the Commission for further proceedings consistent with this order. Moreover, although the ALJ did not err in failing to consider Dr. Phillips' report dated March 13, 2009, the Court finds that consideration of this report upon remand would be beneficial and ensure a full and complete

///

///

---

[3] Moore notes a Social Security position that "a period of one month's abstinence may be adequate" to assess materiality. (Plaintiff's Mot. at 13.) Moore appears to be referring to a Social Security Administration teletype suggesting that a period of abstinence of one month or more is useful in assessing materiality. *See* Social Security Administration Office of Disability, Emergency Teletype No. EM-96-94 (1996). However, teletypes are internal agency documents that do not carry the force of law. *See Parra*, 481 F.3d at 749. Thus, the ALJ did not err in disregarding it.

15

review of Moore's medical records. Therefore, in the interest of justice, the Court directs the ALJ to consider this report by Dr. Phillips.

**IT IS SO ORDERED.**

Dated: August 6, 2012

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE